Josephine JACKSON,
Intervenor-Appellant,

v.

Irene WHEELER and Anna Benham, Co-Administratrices of Estate of Michael Matejewski, Deceased, Irene Wheeler, Individually, Anna Benham, Individually, Lillian Scalf and Violet Saville, Plaintiffs,

v.

Lyle MATEJEWSKI,
Defendant-Respondent.

No. 38872.

Missouri Court of Appeals,
St. Louis District,
Division Four.

April 18, 1978.

Motion for Rehearing and/or Transfer
Denied June 8, 1978.

J. Patrick Wheeler, Canton, for appellant.

J. William Holliday, Kahoka, for Lyle Matejewski.

Robert W. Blakemore, Akron, Ohio, for Lillian Scalf.

William O. Green, Memphis, for Irene Wheeler.

James T. Holcomb, Trenton, for Anna Benham.

SNYDER, Judge.

Michael Matejewski (Michael) sued to cancel his deed to his son, Lyle Matejewski, of 180 acres of farm land. A default judgment taken after service by publication was set aside by the trial court. Plaintiff died before trial and his administratrices were substituted. Plaintiff's daughter, Josephine Jackson, was permitted to intervene as defendant. From a judgment in favor of defendant Lyle Matejewski, the intervenor appeals.

Appellant contends that the trial court erred in: (1) sustaining objections to her testimony on the basis of § 491.010, RSMo 1969, the dead man's statute; (2) refusing to receive testimony at the hearing on defendant's petition for review under Rules 74.12 and 74.15; and (3) directing a verdict for defendant at the close of intervenor's case.

We review this case upon both the law and the evidence giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Rule 73.-01(3). This has been construed to mean "that the decree or judgment of the trial court will be sustained . . . unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The parties stipulated that a general warranty deed dated January 8, 1959 from Michael to respondent Lyle Matejewski reserving a life estate to Michael, was signed and duly recorded in the Clark County records and that Michael subsequently executed a quitclaim deed dated November 21, 1972 and recorded on August 20, 1973 in the

Clark County records which conveyed the property in question to "Mike Matejewski and Josephine D. Jackson as joint tenants with the right of survivorship and not as tenants in common . . . ." Michael's petition filed April 26, 1974 alleged that the consideration for the conveyance to respondent was an oral contract under the terms of which respondent agreed to maintain and support Michael during the remainder of his natural life and to furnish him a proper and suitable home, clothing, food, medical services, a suitable burial on his death and to operate and manage the farm and pay the taxes and costs of upkeep of the farm. The petition further alleged respondent's breach of the oral contract and requested that the warranty deed be cancelled. Personal service on respondent was attempted unsuccessfully. Service by certified mail was returned marked: "Not Found, Address Unknown". Constructive service was then obtained by publication in a local newspaper. Appellant was the only witness who testified at the default hearing on plaintiff's petition. The plaintiff did not testify. A default judgment was granted setting aside the warranty deed of January 8, 1959 and revesting the title to the real property in Michael alone.

Michael died on March 23, 1975. Respondent's petition for review of the default judgment as provided in Rule 74.12 et seq. was filed on May 5, 1975 alleging that no attempt had been made to ascertain respondent's true address after Michael's petition to set aside the deed was filed and that respondent's address could have been discovered if an attempt had been made. The petition further denied that there was ever any agreement between respondent and his father; that the deed was given because Michael wished his son to have the property and to avoid probate; and that the petition upon which the default judgment was rendered was untrue in other material respects.

The administratrices of Michael's estate were substituted as plaintiffs. The administratrices were two daughters of Michael and they individually, along with two other daughters, were joined as additional plaintiffs in the suit. Josephine Jackson, also Michael's daughter, was permitted to intervene as a defendant.

At the hearing in May of 1976 on the petition to review the default judgment, the trial court refused to hear evidence offered by the substituted plaintiffs or the appellant. The court found the allegations of defendant's petition were sufficient to comply with Rule 74.15, set aside the default judgment and granted respondent leave to answer the original complaint. His answer denied the existence of an agreement to care for his father. Respondent also filed a cross-claim to quiet title and a petition for an accounting. Appellant, as intervenor, answered respondent's cross-claim and filed her own petition to set aside the deed, to quiet title and for actual and punitive damages. The claims for an accounting and for damages have been dismissed and need not be considered in this appeal.

Only appellant introduced evidence at the trial. Much of the testimony of two of her witnesses (Michael's attorneys) was successfully objected to as hearsay. Objections to appellant's testimony as to any transactions or conversations of Michael prior to his death were sustained on the grounds that it was inadmissible under the dead man's statute, § 491.010, and also because it was hearsay and stated conclusions of appellant as to Michael's intent. Appellant did testify that after her father's death she had paid the taxes on the land, leased it to various tenants and supervised its operation. She also introduced evidence that she had arranged and paid for her father's funeral. Respondent's motion for a directed verdict was granted by the court at the close of plaintiffs' and intervenor-appellant's evidence and this appeal followed.

Appellant urges that objections to her testimony should not have been sustained because she was not a party to the original contract and since her testimony was in favor of the deceased party it was not barred by the dead man's statute. We hold against the appellant on this point.

Appellant in her offer of proof stated she would have testified that the deed to respondent was given upon consideration that he would care for his father and that instead respondent had abandoned his father; that appellant did in fact care for Michael; that respondent had tricked his father and never intended to comply with the terms of the agreement; and that it was Michael's desire that respondent should never have the fee simple title to the land. Her testimony would further be that Michael intended she should be the owner of the land. The court sustained the objection to this line of testimony on the basis that appellant was disqualified under § 491.010 and that many of the statements presented in the offer of proof were objectionable as being conclusions and hearsay.

The dead man's statute is an enabling statute changing the common law rule which barred parties to litigation from testifying. The statute permits interested parties to testify but then provides in the negative that "where one of the original parties to the contract or cause of action in issue and on trial is dead, . . . the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him, . . ." § 491.010, RSMo 1969.

We are confronted with a unique situation but research of the law relating to § 491.010 indicates that appellant's testimony is inadmissible. To be rendered incompetent under the quoted first proviso of § 491.010, a witness must be both interested and a party to the contract or cause of action. *Ham & Ham Lead and Zinc Inv. Co. v. Catherine Lead Co.*, 251 Mo. 721, 158 S.W. 369, 374[4] (1913); *Galemore v. Haley*, 471 S.W.2d 518, 521[4] (Mo.App.1971). Admittedly appellant was not a party to the contract, that is, the deed between Michael and respondent, but there is no doubt that appellant was a party to the action. She intervened as a party defendant. Her interest plainly was adverse to that of plaintiffs', the representatives and other heirs of Michael.

■ Was her interest of such a nature that it barred her from testifying? In discussing this subject, Missouri courts have cited with approval 58 Am.Jur., Witnesses § 288 which reads in part as follows:

Following the trail blazed by the common-law decisions, it is held that interest, to disqualify a witness under the statute here considered, must be present, certain, and vested, not uncertain, remote, or contingent, and must be in the event of the action. In other words, the interest of a witness must be such that he will gain or lose by the direct legal operation and effect of the judgment of the court disposing of the facts in dispute, or the record must be legal evidence for or against him in some other action.

[Cited in part in *Fisher v. Cox*, 312 S.W.2d 775, 778 (Mo.1958)]. The issue of interest of a witness was considered in *Beckers-Behrens-Gist Lumber Co. v. Adams*, 311 S.W.2d 70 (Mo.App.1958). The court stated at page 73, "It is the witness' interest at the time he is offered as a witness that determines his competency, not his interest at the time of the occurrence or of the formation of the contract." In *American Ins. Co. v. McMichael*, 238 F.Supp. 154 (E.D.Mo.1964), rev'd on other grounds, 351 F.2d 665 (8th Cir. 1965), the court said at page 156:

The test is not, as defendants contend, based upon the fact that if decedent were living he would refute the testimony given by the witness. This would be true in every case where one of the parties to the litigation was dead and some witness was offered to give testimony adverse to the decedent's position in the litigation. The determining factor is the interest of the witness at the time he is called to testify.

Applying these tests, appellant was interested for purposes of the statute. The direct legal operation and effect of the judgment finding title in respondent was to convert her title by quitclaim into a nullity. She had a direct, certain and present interest in the result of the action.

The facts in *Stoops v. Stoops*, 276 S.W.2d 188 (Mo.1955) are similar. In that case, the children of the decedent by his first wife

brought action against the second wife to cancel a deed. A deed was executed by decedent and the first wife to a grantee who then conveyed the same property to the decedent and his second wife. The court held that the dead man's statute precluded one of the children from testifying as to conversations between his mother, the first wife, and father concerning the execution of the deeds or the circumstances under which his mother executed the deed.

Appellant cites *DeMott v. Dillingham*, 512 S.W.2d 918 (Mo.App.1974) to prove the abstract statement of law to the effect that the purpose of § 491.010 is to place all parties to the litigated proceeding on a parity so that as to transactions with a person now deceased, the surviving party is made incompetent to the extent his testimony might be questioned by the other party if living. That is a correct statement of law. However, here appellant was in fact a party to the action. She intervened as a defendant. She occupied a position adversary to plaintiffs who were decedent's representatives and heirs and plainly would have had an undue advantage had her testimony as to pre-death transactions or conversations been permitted.

The situation here is distinguishable from that in *Spaeth v. Larkin*, 325 S.W.2d 767 (Mo.1959) in that appellant is not claiming as an heir, as in *Spaeth*, but as the grantee in a deed to her signed by the decedent, a deed by means of which she is seeking by one of the counts in her intervenor's petition to quiet title to the land in her own name. The trial court ruled properly in sustaining the objection to appellant's testimony on the ground that it was inadmissible under § 491.010. In addition, the record shows clearly that much of the offered evidence was objectionable because it was obviously hearsay and rife with conclusions of the witness as to the intentions of decedent.

We come now to appellant's contention that the trial court erred in refusing to allow testimony at the hearing on respondent's petition for review of the default judgment.

Respondent argues that appellant has not preserved this point for review because of her failure to file a notice of appeal within the statutory time after the trial court vacated the default judgment. He cites *Dillbeck v. Johnson*, 344 Mo. 845, 129 S.W.2d 885 (1939) as his authority. The court there stated at 129 S.W.2d at page 886, "The petition for review is of the nature of an independent action and the order of the trial court ruling on the petition is an order from which an appeal may be granted."

The cases are in conflict on this point. *Dillbeck* does not mention *Bussiere v. Sayman*, 171 Mo.App. 11, 153 S.W. 507 (1913), certified to the Supreme Court, *Bussiere's Adm'r v. Sayman*, 257 Mo. 303, 165 S.W. 796 (Mo. banc 1914), *Stanton v. Hanna*, 185 Mo.App. 91, 170 S.W. 452 (1914), certified to the Supreme Court, 199 S.W. 145 (Mo.1917) or *Holder v. Chidister*, 193 S.W. 568 (Mo. 1917). In *Bussiere's Adm'r*, the court in banc examined in depth the question of the appealability of an order vacating a default judgment. The court considered the question from every available standpoint of reason and authority and ruled that although an order denying a petition or motion to set aside a default judgment is appealable, since otherwise the defendant is out of court, an order setting aside a default judgment is not appealable prior to the trial on the merits, and in so ruling overruled prior cases to the contrary. *Stanton* and *Holder* followed the ruling in *Bussiere's Adm'r*.

Later cases, again not mentioning *Bussiere's Adm'r* or other cases to the contrary, hold that an appeal will lie from an order or judgment setting aside a default judgment in favor of the appellant. *Casper v. Lee*, 362 Mo. 927, 245 S.W.2d 132 (Mo. banc 1952); *Edwards v. Rovin*, 322 S.W.2d 139 (Mo.App.1959).

However, still later this court in *Farrell v. DeClue*, 365 S.W.2d 68, 72–74 (Mo.App. 1963) analyzed in depth the question of the appealability of an order vacating a default judgment and, citing *Bussiere's Adm'r*, *Stanton* and other cases, held that no appeal may be taken from such an order. The court did not mention either *Casper* or *Rovin* in its discussion of the questions, but

*Casper* can be distinguished in that the motion there was in the nature of a writ of error coram nobis and because of errors patent on the record, not a petition for review of a judgment rendered after constructive service.

■ No sharp distinction is drawn in the decisions between motions to set aside default judgments after personal service on the defendant and petitions for review directed to default judgments after constructive service in accordance with Rule 74.12 et seq. However, the reasoning in both sets of circumstances is the same. To allow appeals from decrees setting aside default judgments only complicates lawsuits by opening up the possibility of two appeals in the same case. In addition, in an appeal after a trial on the merits, the appellate court will have a more complete record of the evidence on both sides, and thus will be able to arrive at a better reasoned final decision based on all the facts.

The reasoning in the *Bussiere's Adm'r* and *Farrell* cases seems to us preferable. It reduces the number of appeals and thus expedites the legal process. Further, it comports more with fairness and justice by preventing the plaintiff from having two bites at the apple, one when he appeals the vacation of the default judgment and the other at a trial on the merits if his first appeal fails. Plaintiff is not harmed if he is not allowed before trial to appeal the vacation of the default judgment since he may win in a trial on the merits. If he loses, he can still raise the point on appeal. *Stanton v. Hanna, supra.*

■ Although we agree that appellant has preserved this point for review, we hold that it was not error to vacate the default judgment without taking testimony. The remedy of a petition for review is available to a defendant notified by constructive service. Rule 74.12; *Witcher v. Hanley*, 299 Mo. 696, 253 S.W. 1002 (1923). The record shows that respondent was served only by publication. The record also shows that the petition for review was filed within the three year period of limitation prescribed by Rule 74.14. The question of compliance with the requirements of Rule 74.15 as to contents was correctly ruled in respondent's favor by the trial court. The law under the then applicable statutes which corresponds with the rules now in effect is well stated in *Osage Investment Co. v. Sigrist*, 298 Mo. 139, 250 S.W. 39 (1923). The court at 250 S.W. at pages 40 and 41 said:

■ In order to avail himself of the relief afforded by the statute, it is only necessary under section 1532 [Rule 74.12] that defendant, within the time limited, 'appear, and by petition for review, show good cause for setting aside such judgment.' The 'petition for review' required by that section is explicitly defined by section 1535 [Rule 74.15]. It must be verified by the affidavit of defendant or by his attorney of record; and it must state that defendant was not summoned nor made a party as representative of one who was summoned, that he did not appear to the action, and that the petition of the plaintiff, upon which judgment was rendered, 'is untrue in some material matter, setting it forth, or that he has, and then had, a good defense thereto, setting forth such defense, or both. If the petition conforms to these requirements, it is in and of itself a showing of good cause for setting aside such a judgment, provided the matter with respect to which the plaintiff's petition is alleged to be true is in fact material . . . .

. . . . .

[A]s to the verity of the statements with reference to the untruth of the allegations of plaintiff's petition . . . the petition is conclusive for the purpose of showing good cause for vacating the judgment. The statute does not contemplate that there shall be two trials on the merits.

. . . . .

It follows that on a hearing of a petition for review the only thing to be passed upon by the court, outside of the record facts and the merely formal requisites of the petition, is the materiality of the matter as to which the plaintiff's

petition is therein alleged to be untrue, . . .

An examination of the record and respondent's petition for review indicates that requirements of the rule have been met. His allegation that Michael's original petition was untrue in alleging the existence of an agreement to care for and support him in consideration for the deed and that an accounting was due on the property satisfies the requirement that the petition for review state that the "petition of the plaintiff, upon which the judgment complained of was obtained, is untrue in some material matter . . . ." Rule 74.15. The petition for review was verified. "If a petition for review follows and complies with said provisions of the statute, the court is without discretion in the matter. It must grant the petition." *Dillbeck v. Johnson, supra.* The statute referred to by the court in *Dillbeck* is the same as the rule applicable here.

■ Appellant cites cases relating to interpretation of the word "may" as used in the statutes. It is true that the word "may" is used in Rule 74.12 and in the statutes from which the rule was derived, but in the context of this rule the discretion of the trial court extends only to determination of full compliance of the petition with the rules, not the merits of the case. The allegations of the petition must be accepted as true for purposes of ruling on the vacation of the default judgment. When the petitioner for review fulfills the requirements of Rule 74.15 as to the contents of his petition and when the record shows the other necessary facts, the trial court has no discretion and the petition must be granted. *Dillbeck v. Johnson, supra; Osage Inv. Co. v. Sigrist, supra.*

Appellant cites *Butcher v. White,* 267 S.W.2d 701 (Mo.App.1954) in support of his argument that the trial court has discretion in deciding whether to set aside a default judgment and therefore, should hold an evidentiary hearing. The case is not in point. In *Butcher,* the judgment was not vacated. Instead, the trial court refused to set aside the default because the petition for review was defective in that it failed to deny the truth of the allegations in plaintiff's petition or to state facts from which the judge might have determined that there was a good defense to the action on the merits.

■ The statute relating to the review of default judgments on service by publication is highly remedial, intended to give a defendant, against whom default judgment has been rendered on service by publication, an actual day in court before his property is taken from him by judicial decree and the statute should be liberally construed to promote its beneficent purpose. *Chilton v. Cady,* 250 S.W. 403 (Mo.1923). The court ruled properly in vacating the default judgment without hearing evidence.

Appellant finally charges that the court erred in directing a verdict for defendant because there was evidence of a confidential relationship between Michael and respondent at the time the warranty deed was made and that evidence of a confidential or fiduciary relationship at the time of a conveyance shifts the burden of proof to the grantee. This point is also ruled against appellant.

■ Determinative of this point is the total absence of evidence of a confidential relationship. We have been cited to no testimony which even remotely suggests that a fiduciary relationship existed between Michael and respondent. The only evidence in the record is that for a short period of time both lived on the land, title to which is being questioned here. They occupied separate residences during that time. There is not a scintilla of evidence of any agreement between them, of any joint effort in connection with the operation of the farm or of any actions taken by Michael as a result of advice or guidance by respondent. There is no evidence of the trust or reliance that is required in order to find a confidential relationship. *Jackson v. Tibbling,* 310 S.W.2d 909, 915[8] (Mo.1958). The *Jackson* case was cited by appellant but it is clearly distinguishable. In *Jackson* there was weighty evidence of reliance and trust. There, plaintiff designated defend-

ant as her safe-deposit box deputy and re-lied on him for assistance in matters previously handled by her deceased husband. Defendant was her only adviser other than a lawyer who advised her on legal matters. Here no such facts are before us.

We cannot consider evidence which might have been given by appellant if she had been allowed to testify. In truth, there is more evidence in the record of a possible confidential relationship between appellant and Michael than there is to substantiate such a relationship between the respondent and Michael.

The other cases cited by appellant are not in point. They relate to fraud. There is no evidence before the court of any fraud or misrepresentation on the part of respondent.

AFFIRMED.

DOWD, P. J., and ALDEN A. STOCKARD, Special Judge, concur.